2012 UT 17

Jennifer BRODERICK, Kathleen Christensen, Shannon Miller, Kevin Miller, Tyrone Rogers, Gertrude Scheidecker, Veronica Sigua, Savannah Brandewie, Lisa Morgan, Grant Harkness, Mark Shumate, and Michael Kemp, Appellants and Plaintiffs,

v.

APARTMENT MANAGEMENT CONSULTANTS, L.L.C., Howard Schmidt, David Schmidt, Colorado Casualty Company, Jason (Jake) Leoncini, Canyon Cove Properties, LLC, and John Does 1–15, Appellees and Defendants.

Nos. 20100276, 20100320.

Supreme Court of Utah.

May 4, 2012.

James R. Hasenyager, Peter W. Summerill, Ogden, for appellants.

Gregory J. Sanders, Patrick C. Burt, Salt Lake City, for appellee Apartment Management Consultants, L.L.C.

Scott T. Evans, Scot A. Boyd, Salt Lake City, for appellee Canyon Cove Properties, LLC.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In this case, a group of residential tenants (collectively, Tenants) allege claims of negligence against Canyon Cove Properties, LLC, and Apartment Management Consultants, L.L.C. (collectively, AMC). AMC argues that it was relieved from liability because Tenants signed a Residential Release Agreement (Agreement) that included a limited liability provision (Exculpatory Clause or Clause) waiving the right to bring an action for negligence against AMC. The district court concluded that the Agreement and the Exculpatory Clause did "not violate public policy" and were therefore "valid and enforceable." Accordingly, it granted summary judgment for AMC.

¶ 2 On appeal, Tenants contend that the Exculpatory Clause is unenforceable because it violates Utah's public policy of encouraging landlords to act with care, and it falls within the public interest exception under the factors set forth in *Tunkl v. Regents of the University of California*.[1] AMC fails to respond meaningfully to Tenants' claim. Indeed, AMC's brief largely ignores Tenants' points and instead puts forth unrelated arguments that fail to address or refute Tenants' position. Thus, without reaching the merits of the issues before us, we reject AMC's brief and accept Tenants' claim that the Exculpatory Clause in the Agreement is unenforceable. Accordingly, we reverse the grant of summary judgment in favor of AMC and remand this case to the district court for proceedings consistent with this opinion.

## BACKGROUND

¶ 3 Tenants resided in an apartment complex in Ogden, Utah. The apartment complex was owned and operated by AMC. Between March and August 2005, every Tenant signed an Agreement to lease an apartment in the complex. The Agreements each included an Exculpatory Clause containing the following language:

> Owner will not be liable for any damages or losses to person or property caused by any Resident or any other person including, but not limited to, any theft, burglary, assault, vandalism or other crimes. Owner shall not be liable for personal injury or for damage to or loss of Resident's personal property (furniture, jewelry, clothing, etc.) or Resident from fire ... or negligent behavior of Owner or its agents unless such injury or damage is caused by *gross negligence* of owner or its agents. **OWNER STRONGLY RECOMMENDS THAT RESIDENT SECURE RENTERS INSURANCE TO PROTECT AGAINST ALL OF THE ABOVE OCCURRENCES.**[2]

¶ 4 In November 2005, an arsonist started a fire at the apartment complex. As a result of the fire, Tenants suffered property damage and personal injuries. They filed suit against AMC, alleging that its negligence contributed to their damages from the fire. Specifically, Tenants claimed that AMC was negligent because it failed to (1) warn residents that the building did not contain fire blocking, (2) take any measures to reduce or eliminate fire hazards when it knew about a previous fire at the apartment complex, (3) have a functional fire alarm system, (4) have security at the premises, (5) remove a couch from a stairwell that served as the ignition for the fire, and (6) provide adequate access to firefighters.

¶ 5 After discovery, AMC filed a motion for summary judgment on the ground that Tenants' negligence claims were barred by the Exculpatory Clause in the Agreement. Spe-

---

1. 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 444–46 (1963). We have used the *Tunkl* standard to evaluate preinjury releases on two occasions. *Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶ 18, 179 P.3d 760 (holding that, as a matter of law, recreational activities do not meet the *Tunkl* criteria to fall within public interest exception); *Berry v. Greater Park City Co.*, 2007 UT 87,

¶¶ 15, 24, 171 P.3d 442 (holding that skiercross racing does not meet the *Tunkl* criteria).

2. Some of the Agreements contain wording that varies slightly from the quoted provision, but is substantively the same for purposes of the issues before us.

cifically, AMC argued that, by signing the Agreement containing the Exculpatory Clause, Tenants had released it from liability for negligence claims and claims arising from fire and arson. Tenants opposed the motion for summary judgment, arguing that the Exculpatory Clause violates public policy and is unenforceable. The court concluded that the Exculpatory Clause "do[es] not violate public policy" and is "valid and enforceable." It therefore concluded that Tenants' causes of action for negligence were barred by the Clause. Accordingly, it granted summary judgment in favor of AMC.

¶ 6 On appeal to this court, Tenants argue that the district court erred in granting summary judgment because the Exculpatory Clause violates Utah's public policy of encouraging landlords to act with care, and the Clause falls within the public interest exception under the factors set forth in *Tunkl v. Regents of the University of California.*[3] AMC ignores Tenants' main arguments on appeal. Instead of addressing Tenants' points, it argues that the Exculpatory Clause is clear and unambiguous, that the fact that an arsonist started the fire weighs against finding the Clause unenforceable, that Tenants have not established that AMC's negligence caused their damages, and that the Agreement and Exculpatory Clause were not contracts of adhesion.

¶ 7 We have jurisdiction to hear this appeal under section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶ 8. "We review the district court's decision to grant summary judgment for correctness, granting no deference to the district court."[4]

## ANALYSIS

¶ 9 Rule 24 of the Utah Rules of Appellate Procedure governs the contents and format of briefs submitted to the court. In particular, rule 24(a) requires that the argument section of a brief "contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on."[5] Further, we have explained that "a party must plead his claims with sufficient specificity for this court to make a ruling on the merits"[6] and that a brief "must provide the reasoning and legal authority that will assist this court in resolving th[e] concerns" on appeal.[7] Indeed, "a reviewing court is not simply a depository in which [a] party may dump the burden of argument and research,"[8] and, accordingly, "[w]e will not assume a party's burden of argument and research."[9]

¶ 10 Rule 24(b) makes the requirements of rule 24(a) applicable to the brief of

**3.** 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 444–46 (1963). Tenants also argue that *all* exculpatory clauses in residential leases immunizing landlords from negligence violate public policy and the public interest. Because AMC has not provided us with adequate briefing to aid us in our analysis of this question, we do not consider whether exculpatory clauses in residential leases are categorically unenforceable on public policy and public interest grounds. *See infra* ¶ 19.

**4.** *Alliant Techsystems, Inc. v. Salt Lake Cnty. Bd. of Equalization,* 2012 UT 4, ¶ 17, 270 P.3d 441 (alteration omitted) (internal quotation marks omitted).

**5.** Utah. R.App. P. 24(a)(9). We have reprimanded appellants for failing to adequately brief issues on numerous occasions. *See, e.g., Smith v. Four Corners Mental Health Ctr., Inc.,* 2003 UT 23, ¶ 46, 70 P.3d 904 (declaring an appellant's brief inadequate when it merely cited a few cases and did not conduct any substantial analysis); *State*

*v. Lafferty,* 2001 UT 19, ¶ 95, 20 P.3d 342 (noting that the appellate court is entitled to have the issues clearly defined in the briefs); *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998) (holding that "bald citation[s] to authority [without] development of that authority and reasoned analysis based on that authority" render a brief inadequate).

**6.** *Angel Investors, LLC v. Garrity,* 2009 UT 40, ¶ 35, 216 P.3d 944 (internal quotation marks omitted).

**7.** *Neff v. Neff,* 2011 UT 6, ¶ 69, 247 P.3d 380; *see also id.* (disregarding the appellant's argument because he had not complied with rule 24 of the Utah Rules of Appellate Procedure).

**8.** *State v. Honie,* 2002 UT 4, ¶ 67, 57 P.3d 977.

**9.** *Angel Investors,* 2009 UT 40, ¶ 35, 216 P.3d 944 (alterations omitted) (internal quotation marks omitted).

the appellee.[10] Accordingly, we expect that both appellants and appellees will adhere to the standard of legal analysis set forth in rule 24(a).[11] In addition, we also require "the brief of the appellee [to] contain the contentions and reasons of the appellee with respect to the issues presented in the opposing brief."[12]

¶ 11 Under our rules of appellate procedure, we need not address briefs that fail to comply with rule 24. Specifically, rule 24(k) states that "[b]riefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court."[13] And we have "discretion to not address an inadequately briefed argument."[14]

¶ 12 In this case, AMC fails to address Tenants' plausible arguments that the Exculpatory Clause is unenforceable because it violates Utah public policy and falls within the public interest exception. Indeed, we have held that limited liability provisions may be unenforceable under certain circumstances, including when such releases "offend public policy" or "fit within the public interest exception."[15] Accordingly, in their opening brief, Tenants maintain that it is against public policy to allow AMC to immunize itself for harm caused by its own negligence because landlords have statutory and common law duties to keep premises reasonably safe. Further, Tenants contend that the Exculpatory Clause is unenforceable because it falls within the public interest exception under the standard set forth in *Tunkl v. Regents of the University of California*,[16] which we have used to evaluate pre-injury releases on two occasions.[17]

¶ 13 Under the *Tunkl* standard, an exculpatory clause may be unenforceable on public interest grounds when the party seeking to enforce the clause (1) is involved in "business of a type generally thought suitable for public regulation"; (2) "is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public"; (3) "holds himself out as willing to perform this service for any member of the public who seeks it"; (4) "possesses a decisive advantage of bargaining strength against any member of the public who seeks his services"; (5) "confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser [or lessee] may pay additional reasonable fees and obtain protection against negligence"; and (6) places "the person or property of the purchaser [or lessee] ... under the control of the seller [or lessor], subject to the risk of carelessness by the seller [or lessor,] or his agents."[18] "Consideration of these traits is a flexible endeavor; the activity at issue need exhibit only a suf-

---

**10.** UTAH R.APP. P. 24(b) (providing that "[t]he brief of the appellee shall conform to the requirements of paragraph (a) of this rule," except that, under some circumstances, the appellee need not include a statement of the issues, a statement of the case, or an addendum).

**11.** *See, e.g., Angel Investors*, 2009 UT 40, ¶¶ 34–36, 216 P.3d 944 (declining to address the appellee's assertion that the appellants were not valid representatives of the corporation because their "argument lack[ed] the detail and citations to the record that are necessary before we will consider an argument on appeal"). Indeed, although Utah appellate courts have discussed the appellee's responsibility to adequately brief less frequently than that of the appellant, both this court and the Utah Court of Appeals have declined to address appellees' arguments because they were inadequately briefed. *See id.; Advanced Restoration, L.L.C. v. Priskos*, 2005 UT App 505, ¶ 36, 126 P.3d 786 (declining to award attorney fees to the appellee because the appellee provided no legal basis for why it should receive them in its brief); *State v. Montoya*, 937 P.2d 145, 150 (Utah

Ct.App.1997) (declining to affirm the trial court's decision on other proper grounds when the appellee failed to brief an element of its theory in its brief).

**12.** *Brown v. Glover*, 2000 UT 89, ¶ 22, 16 P.3d 540.

**13.** UTAH R.APP. P. 24(k).

**14.** *Angel Investors*, 2009 UT 40, ¶ 35, 216 P.3d 944.

**15.** *Pearce*, 2008 UT 13, ¶ 14, 179 P.3d 760.

**16.** 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 444–46 (1963).

**17.** *See supra* 2 n. 1.

**18.** *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 15, 171 P.3d 442 (internal quotation marks omitted).

ficient number of *Tunkl* characteristics such that one may be convinced of the activity's affinity to the public interest."[19] Tenants put forth credible arguments that *all* of the *Tunkl* factors apply in this case. But they also argue that each of these factors "standing on its own" provides a basis for concluding that the Exculpatory Clause is unenforceable.

¶ 14 On the other hand, AMC's brief largely ignores the points in Tenants' brief. Instead, it makes arguments that are unrelated to the issues Tenants raise and that fail to address or refute Tenants' points. First, AMC contends that the Exculpatory Clause is enforceable because it is clear and unambiguous. But Tenants do not claim that the Clause is unclear or ambiguous. And AMC's argument on this matter does not refute Tenants' claim that the Clause is unenforceable on public policy and public interest grounds. Thus, the argument that the Exculpatory Clause is clear and unambiguous is both uncontested and irrelevant to the issues Tenants present on appeal.

¶ 15 Second, AMC contends that the fire was caused by an intentional act of arson, rather than by AMC's negligence, and accordingly, that it is inappropriate for us to find the Exculpatory Clause unenforceable as a matter of public policy. But this argument ignores Tenants' position that, regardless of who started the fire, AMC's negligence contributed to the damages resulting from the spread of the fire throughout the apartment complex. Further, AMC's focus on the fact that an arsonist started the fire does not address Tenants' plausible claim that AMC's statutory and common law duties to provide safe premises create a public policy that disfavors AMC's attempt to immunize itself from the consequences of its negligence through the Exculpatory Clause.

¶ 16 Third, AMC argues that, even if Tenants' assertions of its negligence were true, "Tenants have not established anywhere in the record ... that this contributed to their loss." It states that "Tenants simply point to miscellaneous things they contend were inadequate and ask this court to make the unbridged leap to negligence." But the ques-

tion of whether AMC's acts contributed to Tenants' loss is a question of causation, and that issue is not before us. On appeal, Tenants argue that the district court erred in its conclusion that the Exculpatory Clause did "not violate public policy" and was "valid and enforceable," such that Tenants' negligence claims were precluded. Whether tenants have established that AMC's acts "contributed to their loss" is irrelevant to Tenants' claim that the Exculpatory Clause is unenforceable on public interest and public policy grounds and that it therefore should not bar their claims of negligence.

¶ 17 Finally, AMC attempts to circumvent Tenants' arguments that the Exculpatory Clause violates public policy and the public interest by asserting that the Agreement and the Exculpatory Clause were not contracts of adhesion. But AMC does not point out that this argument relates to one of the *Tunkl* factors set forth in Tenants' brief. In fact, it never recognizes Tenants' argument that the Clause is unenforceable under the *Tunkl* factors at all. Thus, AMC fails to provide us with meaningful analysis of how its assertion that the Agreement and the Exculpatory Clause are not contracts of adhesion relates to the enforceability of the Clause under the *Tunkl* factors set forth in Tenants' brief. Moreover, even if the Agreement and the Exculpatory Clause are not contracts of adhesion, such that the relevant *Tunkl* factor does not apply in this case, AMC never refutes Tenants' argument that the other five *Tunkl* factors apply here and are sufficient bases for concluding that the Exculpatory Clause is unenforceable.

¶ 18 Thus, AMC fails to meaningfully address Tenants' claim that the Clause is unenforceable or provide us with legal analysis addressing the points Tenants raise. Indeed, Tenants note in their reply brief that AMC does not squarely address their arguments. Further, at oral argument, counsel for AMC conceded that its brief failed to address Tenants' arguments regarding the unenforceability of the Clause under the *Tunkl* factors. When asked why AMC did not address these arguments in its brief, counsel for AMC ad-

---

19. *Id.* ¶ 16.

**396**

mitted that he had not personally reviewed the brief before submitting it to the court.

■ ¶ 19 We recognize that appellants bear the burden of persuasion on appeal,[20] but we are convinced that Tenants have met their burden in this case. Tenants have presented a plausible claim that the Exculpatory Clause at issue is unenforceable. Specifically, Tenants have argued that the Clause is unenforceable on public policy and public interest grounds. AMC has failed to address Tenants' arguments, and Tenants' claim that the Clause is unenforceable therefore remains unrebutted. We will not bear the burden of argument and research on behalf of AMC. Nor will we create arguments on behalf of AMC in an attempt to respond to Tenants. Further, without adequate briefing from AMC in response to Tenants' arguments, we are not comfortable addressing the merits of the broader questions of whether exculpatory clauses in residential leases violate public policy or whether they fall within the public interest exception. Without adequate briefing, we have insufficient information to make a ruling that would affect countless landlords and tenants throughout Utah.

¶ 20 Accordingly, because of AMC's inadequate briefing of the issues raised by Tenants, we reject AMC's brief. And thus, without reaching the merits of the broader issues before us, we accept Tenants' claim that the Exculpatory Clause in the Agreement is unenforceable.

### CONCLUSION

¶ 21 In this case, Tenants claim that the district court erred in concluding that their claims of negligence were barred by the Exculpatory Clause and in granting summary judgment for AMC. They argue that the Exculpatory Clause is unenforceable because it violates Utah public policy and negatively affects the public interest under the factors set forth in *Tunkl v. Regents of the Universi-*

---

20. *See, e.g., Chen v. Stewart,* 2004 UT 82, ¶ 79, 100 P.3d 1177 ("[A]ppellants rather than appellees bear the greater burden on appeal." (internal quotation marks omitted)); *Polyglycoat Corp. v. Holcomb,* 591 P.2d 449, 450–51 (Utah 1979) ("On appeal, it is appellant's burden to convince

*ty of California.*[21] Because AMC failed to directly address Tenants' arguments, we accept Tenants' claim that the Exculpatory Clause in the Agreement with AMC is unenforceable and do not reach the merits of the issues before us. Accordingly, we reverse the district court's grant of summary judgment in favor of AMC and remand the case to the district court for further proceedings consistent with this opinion.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

this Court that the trial court exceeded its authority.").

21. 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 444–46 (1963).